IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE, | : |
| | : |
| Plaintiff, | : Civil Action No. _____ |
| | : |
| v. | : JURY TRIAL DEMANDED |
| | : |
| ST. JOSEPH'S UNIVERSITY, | : |
| | : |
| Defendant. | : |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. This case is about a female student who sought accommodations for a disability from her college, and was told that she would receive the accommodations but was then suspended by Defendant for poor grades after not receiving even one accommodation.

2. This action seeks to remedy Defendant St. Joseph's University's discrimination against Plaintiff student JANE DOE[1], who suffers from mental health and emotional disabilities, and has been suspended from St. Joseph's University ("SJU") in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, *et seq.*; Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794(a), *et seq.*; and Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557").

3. Plaintiff JANE DOE, though counsel, communicated with SJU since June 30, 2023, in an attempt to resolve these claims amicably and without the need to file this lawsuit.

---

[1] Because of the nature of these allegations, and Plaintiff's legitimate need for and right of privacy, Plaintiff files this Complaint without the appearance of her actual identity in the caption. The pseudonym JANE DOE is utilized to protect the privacy of the Plaintiff.

1

The parties have both met and discussed the issues raised in this Complaint, and SJU has refused to reinstate Plaintiff.

4. Plaintiff will suffer immediate and irreparable injury, loss, or damage before SJU can be heard in opposition to Plaintiff's said application. For example, SJU's academic calendar for the Fall 2023 semester begins on August 28, 2023, and JANE DOE needs to prepare for that semester.

5. Plaintiff seeks injunctive relief that would end SJU's discriminatory practices against her. Plaintiff does not, at this time, seek money damages.

I. **PARTIES**

6. Plaintiff JANE DOE is an adult citizen of the Commonwealth of Pennsylvania.

7. Plaintiff JANE DOE was a student at SJU during the 2021-22 and 2022-23 school years.

8. SJU has suspended JANE DOE for her third year.

9. JANE DOE has a disability within the meaning of the laws alleged in this Complaint.

10. Defendant St. Joseph's University is a private university affiliated with the Roman Catholic Church and located in Philadelphia, Pennsylvania.

11. Defendant SJU offers undergraduate and graduate academic programs that are highly competitive and consistently rated among the top in Pennsylvania.

12. Defendant SJU, at all times material hereto, acted by and through its agents, apparent agents, ostensible agents, servants, employees, workmen and/or representatives who were acting in the course and scope of their respective agency or employment and/or in the

promotion of SJU's business, mission and scope of their respective agency or employment and/or in the promotion of SJU's business, mission and/or affairs.

13. As a place of education, SJU qualifies as a "public accommodation" under Title III of the ADA as that term is defined under 42 U.S.C. § 12181(7)(J). SJU is also a recipient of federal financial assistance within the meaning of Section 504 of the Rehabilitation Act ("Section 504") and Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557") and operates health programs and activities within the meaning of Section 1557.

14. SJU's Student Handbook states that SJU complies with all requirements of the Americans with Disabilities Act of 190 (ADA) to provide equal educational opportunities to all students. SJU's Handbook also states that the university is "committed to a policy of equal opportunity in every aspect of its operations."

15. The SJU Office of Student Disability Services is defined by SJU as set forth below:

> In accordance with Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act (ADA) of 1990, the Office of Student Disability Services coordinates support services and recommends reasonable academic adjustments based on appropriate documentation and the needs of the student. The Office is responsible for promoting access to facilities and programs, ensuring equal educational opportunities, acting as an information and referral source, and serving as a liaison between faculty and student

16. Similarly, SJU's Counseling and Psychological Services (CAPS)

> offers a safe and confidential setting where personal concerns can be openly explored and discussed with a staff psychologist or doctoral level trainee (under supervision). A brief counseling focus typically meets the needs of most students and can be utilized flexibly on multiple occasions throughout one's college career. Those in need of long-term, ongoing counseling or specialized care are typically referred to providers in the local community after an initial assessment. Counseling services are voluntary, confidential and free-of-charge.

17. Staff from both of these departments were aware of Plaintiff's disability.

## II. JURISDICTION AND VENUE

18. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391. A substantial part of the acts and/or omissions giving rise to the claims alleged in this Complaint occurred within this District.

## III. FACTUAL ALLEGATIONS

20. JANE DOE started her career as a student at SJU in the fall of 2021. She was a full-time student at SJU during the 2021-22 and 2022-23 school years.

21. JANE DOE is a member of the SJU Dance Team, which required numerous hours of practice, competition and other work per week. Plaintiff provided leadership and proficiency to the team, which won a National Championship for SJU in January 2023.

22. JANE DOE has suffered from anxiety since childhood but did not receive treatment until she became a high school student and after she was diagnosed with depression in June 2020.

23. During high school, JANE DOE received accommodations in the form of a "504 Plan."

24. A "504 Plan" ensures that students with a disability are allowed to participate in academic, nonacademic and extracurricular activities.

25. Among other things, JANE DOE's "504 Plan" permitted her extended time to complete assignments.

26. After entering SJU, in the Fall of 2021, JANE DOE communicated with Marci Berney, a Director/Case Manager with SJU's Office of Student Outreach & Support, and Christine Mecke, Ed.D., Director of Student Disability Services at SJU, about possible

4

accommodations to assist with her anxiety and associated academic issues.  Indeed, Ms. Berney introduced JANE DOE to Dr. Mecke and informed Dr. Mecke that JANE DOE was "explor[ing] options for academic accommodations at SJU."

27.     Soon thereafter, JANE DOE provided Dr. Mecke with the written "504 Plan" that her high school had implemented.

28.     Dr. Mecke informed Plaintiff that "[b]ecause you have a mental health diagnosis, I would need a letter from your treating provider" in order to qualify for accommodations.

29.     Plaintiff responded that she had already set up an appointment with a psychiatrist through SJU.  As a freshman without a car available to her, Plaintiff did not have the means to visit or treat with her prior treating providers.

30.     Thus, in November 2021, JANE DOE met with Joanne Minerva, M.D., the psychiatrist recommended by SJU.

31.     Dr. Minerva holds herself out as an "Independent consultant at St. Joseph's University" and a "Consultant psychiatrist" at SJU:





32.     Dr. Minerva prescribed JANE DOE an antidepressant and informed JANE DOE that she would draft a letter for Plaintiff to receive accommodations.

33.     On December 9, 2021, Anne Egler, a Staff Therapist at the Counseling and Psychological Services ("CAPS") department at SJU, informed JANE DOE that "Dr. Joanne [Minerva] sent me the letter she wrote for you to receive accommodations." Accordingly, JANE DOE assumed that she would receive accommodations from SJU relative to her academic pursuits.

34.     However, SJU never acted to provide any formal accommodations for JANE DOE during her time as a student.

35.     Because she had been informed that Dr. Minerva's letter was sufficient, JANE DOE, during the course of her freshman and sophomore years, reached out to several professors and instructors about getting accommodations for specific classes. For example, after receiving Ms. Egler's email, JANE DOE reached out to Llana Carroll, a Professor in the English Department, about receiving accommodations in Professor Carroll's Texts and Contexts class.

36.     Several of the instructors were willing to assist JANE DOE, but at least one refused to provide any accommodation.

37. In one particular unpleasant situation, David W. Carpenter, Ph.D., an Associate Professor in the Department of Theology and Religious Studies, publicly embarrassed JANE DOE by commenting on her absences from his class in front of other students.

38. In addition, in order to improve her academic performance on her own, JANE DOE participated in the Rebound Program during her freshman year at SJU.

39. SJU's Rebound Program, provided during the Spring semester, "assists first year students and new transfer students who earned below a 2.0 GPA or less than 12 credits during the Fall semester to get back on track academically."

40. However, without the expected and necessary accommodations, Plaintiff's academic performance continued to suffer.

41. For example, as a SJU student registered with the Office of Student Disability Services, JANE DOE should have been entitled to accommodations such as extra time, note-takers and/or recorded lectures. She was offered none of these.

42. At the end of her sophomore year, JANE DOE had a sufficiently low GPA that she was recommended for academic dismissal. At SJU, if a student, at the end of a semester, has a cumulative GPA below the minimum level, the student will automatically be recommended for academic dismissal.

43. However, a student may appeal this dismissal to the University's Board of Student Academic Review (BOSAR). The BOSAR can recommend a student being placed on academic probation, suspension from SJU, or dismissal from SJU.

44. After JANE DOE's appeal to the BOSAR, Plaintiff was informed that she was being placed on "Academic Suspension" for one year, which included the Summer 2023, Fall 2023 and Spring 2024 semesters.

45. After JANE DOE and her mother approached SJU regarding the BOSAR hearing, SJU, through James Caccamo, Ph.D. (Professor and Associate Dean for Students and Experiential Learning), informed JANE DOE as follows:

> Dr. Mecke informed [JANE DOE] that, in order to set up accommodations, [JANE DOE] would need to provide updated documentation from a medical professional about her current diagnoses. [JANE DOE] was hoping that a note from the CAPS therapist would suffice, but Dr. Mecke informed her that it does not: CAPS does not do diagnoses, and so [JANE DOE] would need to obtain documentation from a medical professional outside the university. <u>[JANE DOE] did not reply, and Dr. Mecke has not heard from [JANE DOE] since</u>. . . . This was a disappointing turn of events, but as a result, Dr. Mecke was not able to move forward.

(underline in original).

46. This email directly contradicts what JANE DOE was told by Ms. Egler of CAPS – that Dr. Minerva "sent [CAPS] the letter she wrote for you [JANE DOE] to receive accommodations."

47. Moreover, Dr. Caccamo admitted that SJU had "no doubt that accommodations would have helped" JANE DOE

48. Nor did Dr. Mecke inform Plaintiff that an "outside" diagnosis was necessary, as stated in Dr. Caccamo's email. In fact, in a November 8, 2021, email to JANE DOE, Dr. Mecke stated "I am not sure" in response to that direct question.

49. Moreover, Dr. Minerva is considerably more than a "CAPS therapist", as described above.

50. Indeed, Dr. Minerva must have made a diagnosis since she prescribed medication for JANE DOE

51. In any case, after November 8, 2021, Dr. Mecke <u>never</u> followed up with JANE DOE, a student with known and identified disabilities. Instead, SJU's Dr. Caccamo tried to paint that inattentiveness by an SJU staff member as *Ms. Ash's negligence.*

52.     SJU cannot stand on its own policies.  For example, SJU's Academic Catalog states as follows:

> A student on academic probation is ineligible to participate in major extracurricular activities, including intercollegiate athletics, or to serve as officer or director of any student activity.

Policies and Procedures, 2022-23 Academic Catalog (available at https://drive.google.com/file/d/1H1SPpallwlxtQepRbb3iKmSRNwEoAkBN/view).

53.     However, Plaintiff was never ruled ineligible for the SJU Dance Team (or, at least until after they won a National Championship).

54.     There is no question that Plaintiff made her condition known to her instructors, staff with the Rebound Program, staff with CAPS, staff with the Office of Student Disability Services, staff from the Office of Student Outreach & Support.  Moreover, upon information and belief, staff from the SJU Athletic Department would have been made aware of JANE DOE's academic performance.

55.     There is no question that, on several occasions, JANE DOE requested academic adjustments from her professors.

56.     There is no question that JANE DOE's disability has been well-documented through her career at SJU.

57.     There is no question that the Office of Student Disability Services should have been working with JANE DOE since her freshman year.

58.     Thus, despite its obligation to "provide[] academic accommodations to eligible students to ensure equal access to the learning environment", the Office of Student Disability Services did nothing of the sort.

59.     SJU knowingly failed to provide JANE DOE with the accommodations necessary for her to perform academically, including:

      a. Failing to offer or make available various test-taking accommodations, such as providing extended time or a "quiet room";

      b. Failing to allow her to record classes so that she would have adequate time and appropriate recall;

      c. Failing to afford her the meaningful help of an advisor through this process who could have provided study advice or assisted with study habits; and/or

      d. Course substitution or waivers.

60. Further, SJU's agents and employees, including Ms. Egler and Dr. Mecke, failed to inform or follow-up with JANE DOE relating to the accommodations to which JANE DOE was entitled and would be needed throughput the course of her career at SJU, as they knew or should have known that JANE DOE would need those accommodations.

61. In doing so, SJU breached its duty to JANE DOE, meaningfully and substantially impairing her ability to perform academically.

62. As a university receiving federal funds, SJU has a responsibility to identify and assist students with handicaps or disabilities, especially students who have self-identified their issues and attempted to cooperate with the university staff, as Ms. Ash did.

63. A suspension of two semesters would significantly harm JANE DOE, a student who needs to be in the classroom and with her supportive coaches and teammates. Such a suspension will damage her immediate and long-time future.

64. Upon information and belief, per SJU's withdrawal policy, JANE DOE will be banned from making use of SJU libraries or athletic or other facilities, including participating in extracurricular activities or attending classes.

65. SJU's academic calendar for Fall 2023 starts on August 28, 2023, and JANE DOE needs to prepare and confirm she will be a student at SJU.

66. SJU expects JANE DOE to take and complete courses at a local university or community college, at significant cost to her and her family.

67. Moreover, JANE DOE will be unable to participate in SJU's Dance Team, which begins training and tryouts on Friday, August 4, 2023.

68. Finally, JANE DOE had been awarded several grants and scholarships to assist her and her family with the financial costs of SJU. These scholarships and grants are now in jeopardy due to JANE DOE's low grades and her potential academic suspension.

69. JANE DOE's injuries are ongoing because Defendant's suspension is part of JANE DOE's permanent record and will likely impair JANE DOE's ability to find a position after college because schools assess applicants' academic record.

## IV.     CAUSES OF ACTION

### COUNT I
### Violation of the Americans with Disabilities Act

70. Plaintiff re-allege and incorporates herein all previously alleged paragraphs of this Complaint.

71. Title III of the Americans with Disabilities Act ("ADA") and its implementing regulations entitle individuals with disabilities to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).

72. At all times relevant to this action, Plaintiff JANE DOE was a SJU student who had a disability, was regarded as having a disability, or has a record of a disability, and thus was and is a qualified individual with a disaibilty within the meaning of the ADA. 42 U.S.C. § 12102.

73. At all times relevant to this action, SJU has been and is a "place of public accommodation" within the meaning of Title III of the ADA, as an undergraduate or postgraduate school, or other place of education. 42 U.S.C. § 12181(7)(J).

74. Title III prohibits public accommodations from denying or affording an unequal opportunity to an individual or class of individuals with disabilities, on the basis of a disability, the opportunity to participate in or benefit from the goods, services, facilities, privileges advantages, or accommodations of the entity or otherwise discriminating against them on the basis of disability. 42 U.S.C. § 12182(b)(1)(A)(i)–(ii); 28 C.F.R. § 36.202(a)–(b).

75. Title III provides that goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual. 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a).

76. Title III provides that an individual or entity shall not utilize standards or criteria or methods of administration that screen out, tend to screen out, or have the effect of discriminating on the basis of disability such that persons with disabilities cannot fully and equally enjoy any goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. §§ 12182(b)(1)(D)(i), 12182(b)(2)(A)(i); 28 C.F.R. §§ 36.204, 36.301(a).

77. Title III further defines discrimination to include the failure of a public accommodation to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities. 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a).

78. Regulations implementing Title III prohibit public accommodations from imposing a surcharge on a particular individual with a disability or any group of individuals with

disabilities to cover the costs of measures, such as reasonable modifications in policies, practices, or procedures, that are required to provide that individual or group with the nondiscriminatory treatment required under the ADA and its implementing regulations. 28 C.F.R. § 36.301(c).

79. SJU has violated Title III of the ADA by denying Plaintiff, on the basis of her disability, the opportunity to fully and equally enjoy, participate in, and benefit from SJU's goods, services, facilities, privileges, advantages, and accommodations.

80. SJU has violated Title III of the ADA by maintaining and executing policies and practices that utilize criteria and methods of administration that have the effect of discriminating against students with mental health disabilities by tending to screen them out of—and make it more onerous for them to regain access to—campus services, facilities, privileges, advantages, and accommodations, on the basis of disability.

81. SJU has violated Title III of the ADA by failing to make reasonable modifications to its policies and practices to ensure Plaintiff has equal access to the benefits of SJU's goods, services, facilities, privileges, advantages, and accommodations.

82. SJU has violated Title III of the ADA by failing to provide Plaintiff goods, services, facilities, privileges, advantages, and accommodations in the most integrated setting appropriate to their needs.

83. SJU's conduct constitutes ongoing and continuous violations of the ADA, and unless restrained from doing so, SJU will continue to violate the ADA. This conduct, unless enjoined, will continue to inflict injuries for which Plaintiff has no adequate remedy at law.

84. Consequently, JANE DOE is entitled to injunctive relief pursuant to section 308 of the ADA (42 U.S.C. § 12188(a)).

**WHEREFORE**, Plaintiff requests relief as set forth below.

## COUNT II
## Violation of Section 504 of the Rehabilitation Act of 1973

85. Plaintiff re-allege and incorporates herein all previously alleged paragraphs of this Complaint.

86. Section 504 of the Rehabilitation Act of 1973 ("Section 504") provides that otherwise qualified individuals with disabilities shall not, solely by reason of their disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. 29 U.S.C. § 794(a); 34 C.F.R. § 104.4(a).

87. As individuals with mental health disabilities or who has a record thereof or who has been regarded as having a disability, Plaintiff is a person with disabilities within the meaning of Section 504. 29 U.S.C. § 794(a); 29 U.S.C. § 705(20). As an admitted and current student, Plaintiff has otherwise been qualified to participate in SJU's services, programs, and activities. 34 C.F.R. § 104.3(l)(3).

88. As a university, SJU's operations are qualified programs or activities within the meaning of Section 504. 29 U.S.C. § 794(b)(2)(A); 34 C.F.R. §§ 104.3(k)(2)(i), 104.41. As an educational institution which permits students to pay education-related costs with the assistance of federal grants and loans and has done so at all times relevant to the claims asserted in this Complaint, SJU is a recipient of federal financial assistance sufficient to invoke Section 504 coverage. 34 C.F.R. § 104.3(h).

89. Section 504 implementing regulations promulgated by the U.S. Department of Education ("DOE regulations") provide that recipients of federal financial assistance, in providing any aid, benefit, or service, may not, on the basis of disability, discriminate against an otherwise qualified person with a disability by providing them with an opportunity to participate

in or benefit from the aid, benefit, or service that is different, separate, not equal, or not as effective as that which is afforded others. 34 C.F.R. § 104.4(b)(1)(i)–(iv).

90. DOE regulations further prohibit recipients of federal financial assistance from limiting a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving any aid, benefit, or service. 34 C.F.R. § 104.4(b)(1)(vii).

91. DOE regulations prohibit recipients of federal financial assistance from utilizing criteria or methods of administration that have an adverse effect on persons with disabilities, or that have the purpose or effect of defeating or substantially impairing accomplishment of the recipient's program or activity objectives with respect to qualified persons with disabilities. 34 C.F.R. §§ 104.4(b)(4), 104.42(b)(2).

92. DOE regulations provide that no qualified student with a disability shall, on the basis of disability, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any academic, research, housing, health insurance, counseling, financial aid, athletics, recreation, other extracurricular, or other postsecondary education aid, benefits, or services. 34 C.F.R. § 104.43(a); *see also* 34 C.F.R. §§ 104.43(c), 104.52(a)(1).

93. DOE regulations require covered entities to operate their program or activity in the most integrated setting appropriate. 34 C.F.R. § 104.43(d).

94. SJU has violated Section 504 by denying Plaintiff the benefits of the school's programs, services, and activities on the basis of disability.

95. SJU has violated Section 504 by maintaining rules, including eligibility criteria and methods of administration, that have the effect of discriminating against students with

mental health disabilities by tending to screen them out of maintaining student status and access to campus resources on the basis of disability.

96. As a proximate result of SJU's violations of Section 504 of the Rehabilitation Act, Plaintiff has been injured as set forth herein.

97. SJU's discriminatory conduct presents a real and immediate threat of current and continuing violations; thus, declaratory and injunctive relief are appropriate remedies.

98. Plaintiff has no adequate remedy at law and unless the relief requested herein is granted, Plaintiff will suffer irreparable harm in that she will continue to be discriminated against and denied access to SJU's programs and services. Consequently, Plaintiff is entitled to injunctive relief. 29 U.S.C. §§ 794a(a)(2), 794a(b).

**WHEREFORE**, Plaintiff request relief as set forth below.

## COUNT III
## PRELIMINARY AND PERMANENT INJUNCTION

99. Plaintiff re-allege and incorporates herein all previously alleged paragraphs of this Complaint.

100. SJU, through the processes detailed above, violated Plaintiff's rights.

101. Plaintiff has no adequate remedy at law and will suffer irreparable harm unless and until SJU is enjoined from suspending Plaintiff from continuing as a student at SJU.

102. Accordingly, Plaintiff seeks a preliminary and permanent injunction enjoining SJU from enforcing said suspension imposed upon Plaintiff.

## COUNT IV
## TEMPORARY RESTRAINING ORDER

103. Plaintiff re-allege and incorporates herein all previously alleged paragraphs of this Complaint.

104. Plaintiff incorporates herein by reference the relief requested in her Application for Temporary Restraining Order, which is filed contemporaneously herewith.

105. Plaintiff will suffer immediate and irreparable injury, loss, or damage before SJU can be heard in opposition to Plaintiff's said application.

106. For example, SJU's academic calendar for the Fall 2023 semester begins on August 28, 2023, and JANE DOE needs to prepare for that semester.

107. Moreover, SJU's Dance Team begins training and tryouts on Friday, August 4, 2023. If JANE DOE is suspended by SJU, she cannot participate on that team.

108. As set forth fully in Plaintiff's said application, Plaintiff and her attorney have met all of the procedural requirements set forth in Fed.R.Civ.P. 65.

109. Plaintiff thus seeks a temporary restraining order restraining and enjoining SJU from enforcing said suspension imposed upon Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests:

a. That Defendants be enjoined from violating the Americans with Disabilities Act and Section 504 of the Rehabilitation Act;

b. That the Court find that immediate and irreparable injury, loss or damage will result to JANE DOE if she is suspended by Defendant for the 2023-2024 school year;

c. That the Court enter a Temporary Restraining Order that immediately and without notice enjoins SJU from enforcing the suspension issued against Plaintiff;

d. That the Court order SJU to immediately reinstate JANE DOE as a student for the 2023-24 school year;

e. That the Court set a hearing for a preliminary injunction;

f. That Defendant be ordered to adopt policies and procedures sufficient to remedy the violations complained of herein;

     g.     Ultimately, expunge JANE DOE's suspension from her record and provide her with academic forgiveness on certain classes;

     h.     An award of reasonable attorneys' fees and costs; and

     i.     Such other relief that the Court deems just and proper.

## **JURY TRIAL DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Relators demand a jury trial for all claims and issues so triable.

                                                                         Respectfully submitted,

Dated:   August 2, 2023                       /s/ *Brian J. McCormick, Jr.*
                                                                       Brian J. McCormick, Jr., Esquire
                                                                       ROSS FELLER CASEY, LLP
                                                                       One Liberty Place
                                                                       1650 Market St., 34th Floor
                                                                       Philadelphia, PA 19103
                                                                       215-231-3740
                                                                       bmccormick@rossfellercasey.com

                                                                       **Attorneys for Plaintiff**