IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JANE DOE,** | |
| *Plaintiff*, | Civil Action |
| *v.* | No. 23-cv-2960 |
| **ST. JOSEPH'S UNIVERSITY,** | |
| *Defendant*. | |

## ORDER

**AND NOW**, this 14th day of August, 2023, upon consideration of Plaintiff's motion for a preliminary injunction (ECF No. 2), the response in opposition thereto (ECF No. 14), and following a hearing held on August 10, 2023, I find as follows:

1. Plaintiff Jane Doe has sued St. Joseph's University for disability discrimination. Plaintiff contends St. Joseph's failed to accommodate her disability, which she characterizes as depression and anxiety. Plaintiff's claims arise under the Americans with Disabilities Acta and the Rehabilitation Act. She seeks a preliminary injunction that would allow her to return to St. Joseph's for this coming fall semester.

**I.     FACTS**

2. A brief summary of the evidence submitted at the preliminary injunction hearing is as follows:

3. Before attending St. Joseph's, Plaintiff attended Ridley High School. There, she had what is known as a Section 504 plan, which provided accommodations for a disability. (PL-001.)

4. Plaintiff started at St. Joseph's in the fall of 2021. In October 2021, Plaintiff had discussions with someone in the University's counseling department about seeking

1

accommodations for her disabilities. She was put in touch with Dr. Christine Mecke, the Director of Student Disability Services, whose office is solely responsible for granting disability accommodations at St. Joseph's. (N.T. 8/10/23 at 201:21-24.) Dr. Mecke told Plaintiff to obtain a letter from a treating provider regarding her disabilities. Plaintiff ended up seeking a letter from a psychiatrist affiliated with the University, Dr. Joanne Minerva. (PL-007.)

5.  On December 8, 2021, Dr. Minerva sent a draft letter to Anne Egler, a University-affiliated therapist that Plaintiff had been seeing, stating that Plaintiff had a disability and recommending that Plaintiff be given accommodations. (D_0031-32.) On December 9, 2021, Ms. Egler sent an email to Plaintiff stating, in part: "Dr. Joanne [Minerva] sent me the letter she wrote for you to receive accommodations. I hope that it will be helpful to you." (PL_0023.)

6.  It does not appear that there was any further discussion about this letter, and apparently no accommodations were provided. St. Joseph's takes the position that Plaintiff needed to obtain this letter and take it to Dr. Mecke herself before she could obtain accommodations. However, St. Joseph's did not present evidence that Plaintiff was specifically told to do so. The only other evidence about Plaintiff's request for accommodations after December 9, 2021 is a therapist's note on January 27, 2022 stating: "Will reconnect with Dr. Mecke re status and accommodations if she still wishes to pursue." (D_0025.) This evidence seems to reflect that Plaintiff was aware that the ball was in her court to pursue needed accommodations.

7.  Plaintiff generally performed poorly in her classes for the four semesters she was at St. Joseph's. (See D_0001-05.) Few specifics were offered about why Plaintiff did poorly, other than that it appears she missed many classes. Plaintiff denied the extent of her absences and explained that her anxiety contributed to her missing classes. (N.T. 8/10/23 at 92:4-93:11.)

2

8.		After Plaintiff's second year, the University decided to suspend her. Plaintiff appealed, but the University stood by its decision. The University stated that Plaintiff may return after one year, at which time she would be permitted to retake some classes to improve her GPA. Importantly, Plaintiff would be permitted to retake some of the classes she had failed. (N.T. 8/10/23 at 146:5-16.) The University encouraged Plaintiff to take classes at a community college in the interim so that she could earn credit, but did not state that Plaintiff was required to do so as a prerequisite for returning in the fall of 2024. (See D_0012.)

9.		Plaintiff is seeking an order permitting her to return to St. Joseph's this fall. Plaintiff especially desires to return to the University's dance team, which has been an important part of her life and part of the reason she applied to St. Joseph's in the first place.

## II.		DISCUSSION

10.		To obtain a preliminary injunction, a party must show four things: (1) that the party is likely to succeed on the merits of the case; (2) that irreparable harm will result if the injunction is not granted; (3) that the balance of equities favors an injunctions; and (3) that the injunction is in the public interest. Kos Pharmaceuticals, Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004). "Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances." Id. (quotation marks omitted).

11.		To resolve Plaintiff's motion for a preliminary injunction, it suffices to analyze the second and third elements: irreparable harm and balance of the equities. I therefore defer considering the merits of Plaintiff's disability discrimination claims until a later stage of the litigation.

12.		To begin, Plaintiff has not made a persuasive showing that being forced to be away from the University for one year will irreparably harm her. The Third Circuit has not spoken definitively on this issue, but district courts in the Third Circuit generally hold that a delay in education, without more, is not an irreparable harm. Tshudy v. Pa. State Univ., No. 22-cv-01431, 2022

3

U.S. Dist. LEXIS 210041, at *22 (M.D. Pa. Nov. 18, 2022); B.P.C. v. Temple Univ., No. 13-cv-7595, 2014 U.S. Dist. LEXIS 130410, at *15 (E.D. Pa. Aug. 27, 2014); Doe v. Univ. of the Sciences, No. 19-358, 2020 U.S. Dist. LEXIS 158684, at *9 (E.D. Pa. Sep. 1, 2020). But see Doe v. Univ. of Cincinnati, 872 F.3d 393, 407 (6th Cir. 2017) (affirming finding that a suspension would cause irreparable harm). Here, Plaintiff has shown that being at St. Joseph's is important to her, but she has not shown that the benefits it provides in terms of academics and the dance team are irreplaceable or that she cannot afford to delay pursuing them for one year. St. Joseph's has clearly set forth a path upon which Plaintiff can continue her college career there.

13. Even if Plaintiff may suffer some harm from the planned suspension, I conclude that the balance of equities does not favor her requested injunction. "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) (quotation marks omitted). Because an injunction is a "dramatic and drastic" remedy, Holiday Inns of Am., Inc. v. B & B Corp., 409 F.2d 614, 618 (3d Cir. 1969), injunctions are never granted "as of course" any time there is a possible, or even actual, statutory violation. Weinberger v. Romero-Barcelo, 456 U.S. 305, 311 (1982). Rather, "a preliminary injunction is an equitable remedy, which the Court, in its discretion, considers by balancing and weighing the various factors against one another." NAACP v. N. Hudson Reg'l Fire & Rescue, 707 F. Supp. 2d 520, 541 (D.N.J. 2010). For the following reasons, an injunction permitting Plaintiff to return to the University this fall is not appropriate equitable relief on the facts before me.

14. First, the evidence presented at the hearing leaves substantial room for doubt as to Plaintiff's readiness to resume classes this fall. While the University does not seriously dispute that Plaintiff's academic performance may improve if appropriate accommodations are offered,

4

Plaintiff faces a formidable hurdle in the next few months to achieve the grades necessary to remain at the University and avoid expulsion. This fact makes it less likely that Plaintiff would benefit from the injunction she seeks.

15. Second, for the reasons discussed earlier, any irreparable harm Plaintiff may suffer is not strong enough to justify interfering with the University's academic decisions, which courts normally aim to respect. See Pahlavan v. Drexel Univ. Coll. of Med., 438 F. Supp. 3d 404, 418 (E.D. Pa. 2020). Notably, the University is willing to allow Plaintiff to return after one year and to retake classes so that some of her past grades may be removed from her transcript.

16. Finally, an order allowing Plaintiff to return to St. Joseph's this coming semester goes too far when compared to the statutory violation Plaintiff claims to have suffered. The University's alleged violation of the Americans with Disabilities Act centers on a failure to provide accommodations. Specifically, Plaintiff claims that St. Joseph's did not tell her she needed to obtained Dr. Minerva's letter and bring it to Dr. Mecke herself. She also generally alleges that St. Joseph's should have done more to ensure that accommodations were provided. At this stage, Plaintiff has not shown that these oversights by St. Joseph's are the cause of all her academic struggles for the four semesters she was a student. In particular, Plaintiff was aware that she had not received her requested accommodations, yet she did not follow up to see why the process had stalled.

17. When a person seeks an accommodation under the Americans with Disabilities Act, "both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith," a process which may require "a great deal of communication" from both sides. Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 312 (3d Cir. 1999). A school must "seek suitable means of reasonably accommodating the disabled student," "undertak[e] that obligation

conscientiously," and "reach a rationally justifiable conclusion." Pahlavan v. Drexel Univ. Coll. of Med., 438 F. Supp. 3d 404, 418 (E.D. Pa. 2020) (quotation marks omitted). A relevant consideration is whether the student "made a sufficiently direct and specific request for special accommodations." Nathanson v. Med. Coll. of Pennsylvania, 926 F.2d 1368, 1386 (3d Cir. 1991).

18. Here, both sides appear to share some responsibility for the breakdown in communication. But it is unclear, on the preliminary injunction record, that the University is to blame for the entirety of the academic struggles that culminated in Plaintiff's suspension.

19. Moreover, there is a lack of evidence as to how any particular requested accommodation would have affected Plaintiff's performance in any particular class, and Plaintiff was more than a few classes past the threshold for suspension. An injunction must be "tailored" to the particular violation at issue. Milliken v. Bradley, 433 U.S. 267, 282 (1977). Ordering the University to excuse four semesters of underperforming grades is a disproportionate remedy for the alleged failure to tell Plaintiff to take Dr. Minerva's letter to Dr. Mecke or to follow up with Plaintiff when she did not do so.

20. For these reasons, the balance of equities does not favor the injunction Plaintiff requests. Plaintiff's motion for a preliminary injunction will, accordingly, be denied.

**WHEREFORE**, it is hereby **ORDERED** that Plaintiff's motion for a preliminary injunction (ECF No. 2) is **DENIED**.

**BY THE COURT:**

   /s/ Mitchell S. Goldberg   
**MITCHELL S. GOLDBERG, J.**